IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHAEL TAYLOR                                                    PLAINTIFF

V.                              NO. 10-5084

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Michael Taylor, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff filed his applications for DIB and SSI on September 19, 2007, alleging an inability to work since March 21, 2007,[1] due to back injury, epilepsy, and bipolar disorder. (Tr.

---

[1] In his original applications, Plaintiff alleged his onset date was February 1, 2001. The ALJ stated in his decision that by letter dated April 15, 2009, Plaintiff, through his attorney, amended his alleged disability onset date to March 21, 2007.

132). An administrative hearing was held on April 29, 2009, at which Plaintiff appeared with counsel, and he and his mother testified. (Tr.31-66).

By written decision dated October 30, 2009, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe - mood disorder and seizure disorder. (Tr. 76). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4. (Tr. 77). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot drive and can have no exposure to extreme heat or hazards, such as unprotected heights and heavy machinery. The claimant can perform unskilled work where interpersonal contact is incidental to work performed.

(Tr. 78). With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform other work as a housekeeper, production worker, and packer. (Tr. 81).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on March 26, 2010. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 10).

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing

past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**III.   Discussion**:

In his opinion, when discussing Plaintiff's mental impairments and ability to function in the workplace, the ALJ gave great weight to the mental evaluation performed on November 2, 2007, by psychologist Denise LaGrand, Psy.D. In that evaluation, Dr. LaGrand estimated Plaintiff's IQ to be in the low average range, and diagnosed Plaintiff with Major Depression, moderate to severe. (Tr. 415-416). She also stated that Plaintiff's seizures were more of an impairment to his functioning than his mental symptoms. (Tr. 416). Dr. LaGrand found that Plaintiff's persistence was adequate, but that his pace was slow, and that he would need more time than average to complete tasks. (Tr. 416). Dr. LaGrand also reported that Plaintiff's capacity to cope with the typical mental cognitive demands of basic work-like tasks, sustain concentration and persistence on basic tasks, and complete work-like tasks within an acceptable time frame, was fair. Finally, Dr. LaGrand reported that Plaintiff's ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers was estimated to be low to below average. (Tr. 416-417). Dr. LaGrand's prognosis was reported as a "good chance for improvement in his condition" with adequate treatment and control of seizures. (Tr. 417). Dr.LaGrand gave Plaintiff a GAF score of 50. (Tr.416).

Subsequent to Dr. LaGrand's evaluation, Plaintiff was hospitalized at Vista Health on

four different occasions:  March 11, 2008 to March 18, 2008;  June 19, 2008 to June 23, 2008; August 22, 2008 to August 28, 2008;  and November 9, 2008 to November 14, 2008.  (Tr. 468-470, 472-479, 532-543, 545-551, 556-560, 571-575, 582-584, 588-590, 592-597).  These records were presented to the Appeals Council, which entered an Order stating that it received medical records from Vista Health from March 11, 2008 through November 14, 2008. (Tr. 4).  The only mention the ALJ made of treatment at Vista Health was as follows:

> The claimant has been followed at First Care Family Doctors and NW Arkansas Neuroscience Institute for a number of years.  He has also been treated at Vista Health, Ozark Guidance Center, Mediserve Walk-In Clinic, Wellspring Healthcare Associates, Washington Regional Medical Center, Holden Institute, and Family Chiropractic Center.

(Tr. 78-79).  The ALJ did not discuss any of the Vista Health records in his decision, and some of them were, in fact, referenced in Plaintiff's counsel's Pre-Hearing Memorandum, which appears at pages 186-192 of the transcript.[2]

When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision becomes the final action of the Commissioner.  We then have no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action. See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, our task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence made part of the record by the Appeals Council that was not before the ALJ.  As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994).  However,

---

[2] In Plaintiff's pre-hearing memorandum, Plaintiff's counsel listed the August 2008 and November 2008 stays at Vista Health.  The March 2008 and June 2008 stays were not listed.  It appears therefore, that the ALJ should have at least been aware of the August and November visits.

once it is clear that the Appeals Council considered the new evidence, then we must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires us to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. Flynn v. Chater, 107 F.3d 617, 621 (8th Cir.1997). Thus, we have endeavored to perform this function with respect to the newly submitted evidence

What causes the Court concern is the fact that subsequent to the November 2, 2007 evaluation by Dr. LaGrand, and the Mental RFC Assessment completed on December 18, 2007 by Paula Lynch, Plaintiff was hospitalized on several occasions for suicidal tendencies. In addition, Plaintiff's GAF scores, subsequent to Dr. LaGrand's evaluation, were 40, 18, 45, 40, 45, 15, 40, 20, and 40. At no time were they higher than 45 after November 2, 2007. Plaintiff was treated by Dr. Ryan Kaplan, of the Northwest Arkansas Neuroscience Institute, and Dr. Lewis E. Britton and Dr. Stephen Dollins at Vista Health, subsequent to November 2, 2007, and although Plaintiff had been seizure free for more than one year on May 19, 2008, he obviously still struggled with suicidal tendencies. The records also reflect that although Plaintiff was not always compliant in taking his medications, he reported having financial reasons for not always having the medications, and this was not addressed by the ALJ. As recent as November 10, 2008, Plaintiff had been hearing voices, exercised poor judgment, and had fair recent and remote memory. (Tr. 589-590).

In Dr. Dollins' November 11, 2008 evaluation, he reported that Plaintiff had three previous psychiatric hospitalizations at the facility (Vista Health), all of which had occurred within the past year. (Tr. 472). "He had been erratically compliant with treatment. He had often missed appointments at my office and had failed to follow up with anyone after his recent

-6-

discharge. He had also cut back and changed his schedule on his medications on his own." (Tr. 472). At that time, Dr. Dollins gave Plaintiff a GAF score of 20, and reported that based on Plaintiff's repeated hospitalizations and erratic compliance with follow up, "his overall prognosis at this time is fair." (Tr. 473). In the November 14, 2008 discharge summary, Dr. Dollins reported that "he had cut back some on his medication due to the cost and schedule." (Tr. 468). Upon discharge, Plaintiff felt he was returning to his usual baseline and credited the recent changes in his medication and getting back on them on a regular schedule as being the primary thing which had helped. (Tr. 469). Even then, his GAF score upon discharge was 40.

The Court believes, in light of the numerous hospitalizations Plaintiff experienced after Dr. LaGrand's evaluation and the Mental RFC Assessment were completed, and Plaintiff's low GAF scores, that this matter should be remanded for the ALJ to obtain a more recent Mental RFC Assessment from one of his treating physicians. Once the ALJ considers the 2008 records and new Mental RFC Assessment, he should then re-evaluate Plaintiff's ability to function in the workplace.

**IV. Conclusion:**

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 23rd day of May, 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE